| | | |
|---|---|---|
| LIFE SAFETY SERVICES, LLC, | ) | |
| HUGHES ENVIRONMENTAL, INC., and | ) | |
| LSS HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-cv-0593 |
| | ) | Judge Aleta A. Trauger |
| JOELLE CANNON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Fire Door Solutions LLC d/b/a Life Safety Compliance Solutions LLC ("FDS/LSCS")

has filed a Motion to Intervene (Docket No. 22), to which Life Safety Services, LLC ("LSS"),

Hughes Environmental, Inc. ("Hughes"), and LSS Holdings, LLC ("LSS Holdings") have filed a

Response (Docket No. 34). FDS/LSCS has also filed a Motion to Limit Discovery and Modify

Temporary Restraining Order (Docket No. 24), to which LSS, Hughes, and LSS Holdings have

filed a Response (Docket No. 32). For the reasons set out herein, the Motion to Intervene will be

granted, subject to the limitations explained in this Memorandum and set out in the

accompanying Order, and the Motion to Limit Discovery and Modify Temporary Restraining

Order will be granted in part and denied in part.

## BACKGROUND

On June 28, 2018, LSS, Hughes, and LSS Holdings filed a Verified Complaint against

Joelle Cannon, whom the Verified Complaint identifies as a former regional sales manager for

LSS. (Docket No. 1 ¶ 25.) The Verified Complaint alleges that Cannon, during her brief tenure at

LSS, accumulated a significant amount of LSS's confidential internal information, which she

then took with her to LSS's competitor, FDS/LSCS, in violation of non-disclosure and non-compete agreements to which she had agreed when she began her employment at LSS. (*Id.* ¶¶ 44–56.) The plaintiffs filed a contemporaneous Motion for Temporary Restraining Order ("TRO"). (Docket No. 2.) On July 17, 2018, the court held a hearing on the TRO motion, and the court granted the TRO the next day. (Docket No. 18.) The TRO was directed at "Cannon, and any and all of Cannon's agents, servants, employees, representatives, attorneys, and any other person or entity in active concert or participation with Cannon, including but not limited to Fire Door Solutions, LLC, Life Safety Compliance Solutions, LLC, and Fire Door Armor, LLC" and enjoined the covered people and entities from:

1. Continuing Cannon's business relationship with Fire Door Solutions, LLC, and/or Life Safety Compliance Solutions, LLC, and/or Fire Door Armor, LLC;

2. Contacting or soliciting LSS's customers, directly or indirectly, for any purposes prohibited by the Agreement;

3. Using, retaining, communicating to others, or otherwise possessing or controlling Plaintiffs' Confidential, proprietary, and/or trade secret information including, but not limited to, records of LSS's and/or Hughes Environmental's past, current, or prospective business deals; LSS's personnel contact list; files containing Plaintiffs' pricing information (including for damper and door inspections); the PDC Attendee List; and a proprietary list of property engineers;

4. Retaining in their possession or control any of the six USB thumb drives, or any other computer, USB (including, but not limited to, USB thumb drives, serial numbers: 7&6f4e135&0&0000, 4C530001150919103215; 125050802103301420884; 7&2f3b1dc9&0; 20042204901900A174DF; and 6011040000007719), or any other thing onto which Plaintiffs' Confidential, proprietary and/or trade secret information was viewed, transferred and/or copied at any time; and

5. Otherwise violating or acting contrary to Cannon's ongoing obligations under the Non-Disclosure and Non-Compete Agreement.

(*Id.* at 2–3.) Also on July 17, 2018, the plaintiffs moved for the court to set a deadline of July 24, 2018, for Cannon to respond to their first set of requests for documents. (Docket No. 14.) The court granted the motion. (Docket No. 17.)

On July 24, 2018, FDS/LSCS filed a Motion to Intervene. (Docket No. 22.) FDS/LSCS argues that intervention is necessary because the plaintiffs' discovery requests and scheduled depositions are likely to intrude upon FDS/LSCS's own confidential and proprietary information. (Docket No. 23 at 2.) FDS/LSCS contemporaneously filed a Motion to Limit Discovery and Modify Temporary Restraining Order. (Docket No. 24.) FDS/LSCS asks the court to "to limit discovery to prohibit the parties to the instant litigation from making any discovery request that would lead to disclosure of FDS/LSCS's confidential, proprietary information or trade secrets, and to modify the Court's temporary restraining order to provide that FDS/LSCS's confidential, proprietary information or trade secrets not be disclosed pursuant to compliance of any party with that order." (*Id.* at 1.) FDS/LSCS also asks the court to dissolve the TRO with regard to Fire Door Solutions, LLC, Life Safety Compliance Solutions, LLC, and Fire Door Armor, LLC, and add a sentence modifying the fourth above-listed obligation to contain an exception for instances where relinquishing the relevant documents would risk disclosure of FDS/LSCS's confidential information. (Docket No. 24-1 at 2.)

The plaintiffs filed a Response to the Motion to Limit Discovery and Modify Temporary Restraining Order. (Docket No. 32.) The plaintiffs state that they are willing to enter into a protective order that would put in place a number of safeguards to protect the plaintiffs' and FDS/LSCS's confidential and proprietary information from improper disclosure and misuse, but they oppose an order that would wholly prohibit discovery including such information. (*Id.* at 2.)

A hearing on whether the TRO should be converted to a preliminary injunction is scheduled for September 12, 2018. (Docket No. 31.)

## ANALYSIS

### A. Motion to Intervene

The right to intervene under Rule 24(a)(2) of the Federal Rules of Civil Procedure arises only if the court finds that the party seeking intervention has, pursuant to a timely motion, established three elements: (1) an interest in the subject matter of the pending litigation; (2) a substantial risk that the litigation will impair the interest; and (3) that existing parties do not adequately protect that interest. *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) ("We have explained that a proposed intervenor must establish four factors before being entitled to intervene: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest." (citation omitted)). The elements are not factors to be weighed; rather, all of the elements must be satisfied before an applicant may exercise a right to intervene under Rule 24(a)(2). *See Ams. United for Separation of Church & State v. City of Grand Rapids*, 922 F.2d 303, 305 (6th Cir. 1990) (noting that an intervenor must satisfy all of the elements of the Rule 24 standard).

The plaintiffs have indicated that they do not dispute FDS/LSCS's right to intervene for the purpose of asserting its right to the protection of confidential or proprietary materials that may be unearthed in discovery. Indeed, the requirements of Rule 24(a)(2) do appear to have been met in that regard. The plaintiffs and FDS/LSCS agree that their lines of business involve the use

4

of confidential and proprietary information and that Cannon would have had access to that information at FDS/LSCS. The discovery requests are broad enough that they pose a real risk of intruding upon that allegedly protected information, and there is no reason to assume that Cannon—whose primary interest in this case is, presumably and appropriately, defending herself[1]—would adequately protect FDS/LSCS's materials without the company's participation. Formally including FDS/LSCS in the litigation would likely be the simplest and most effective way to make sure its interests are protected. There is, moreover, no suggestion that the motion was untimely. The court, accordingly, will grant FDS/LSCS's motion to intervene for the purpose of safeguarding its interest in protected documents.

The plaintiffs object, however, to FDS/LSCS's being granted the full range of rights afforded to a party to a contested claim in the proceeding, such as the right to issue discovery, to question witnesses in the preliminary injunction hearing, or to call witnesses at trial. The court agrees that, at this stage in the proceedings, there is, for the most part, no reason to afford the full range of litigation rights to FDS/LSCS, against whom no claim has been raised. That said, as FDS/LSCS has pointed out, the plaintiffs themselves have sought to bind FDS/LSCS in their preliminary relief. The court, accordingly, will grant the Motion to Intervene for the purposes of (1) asserting protection with regard to confidential or proprietary FDS/LSCS materials and information and (2) contesting the inclusion of FDS/LSCS in any preliminary injunctive relief. Unless and until the plaintiffs file a Notice informing the court that they do not seek preliminary injunctive relief against FDS/LSCS, FDS/LSCS shall be permitted to participate in proceedings related to the preliminary injunctive relief with the status of a full party. To rule otherwise would

---

[1] Defendant Cannon is no longer employed by FDS/LSCS. (Docket No. 25 at 2.) Indeed, she represented to FDS/LSCS in writing that she was not bound by any covenant not to compete. (Docket No. 23-1 at 2.)

be to permit the plaintiffs to file the functional equivalent of a claim for injunctive relief against FDS/LSCS without FDS/LSCS's ever having the opportunity to defend itself.

The court's ruling is without prejudice to any future motion to expand or narrow the scope of FDS/LSCS's rights as intervenor in light of future developments.

## B. Request to Limit Discovery

Under Federal Rule of Civil Procedure 26(b)(1),

[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The scope of discovery, however, may be "limited by court order." *Id.* "[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citations omitted).

FDS/LSCS notes that several of the plaintiffs' requests for production seek all communications between Cannon and FDS/LSCS and its agents during the relevant period, regardless of the subject matter of the communications. Such requests, FDS/LSCS argues, go far beyond what would be necessary to support the plaintiffs' claims against Cannon and would inevitably reach FDS/LSCS's own confidential and proprietary materials. (*See, e.g.*, Docket No. 8-2 at 2–4 (Requests 1, 2, 5, 7, 9).)

Federal Rule of Evidence 401 defines "relevant evidence" as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence," if "the fact is of consequence in determining the action." Because the plaintiffs seek documents and

communications without any specific subject-matter limitation, it is certainly possible that their requests will result in the production of some documents that do not themselves meet the minimum standards of relevance. There are, however, legitimate litigation reasons for the plaintiffs to have formulated the demand broadly. Although the plaintiffs have alleged a number of facts suggesting that Cannon took their confidential and proprietary information when she left LSS, they do not know how precisely that information was used or how her plan to depart for FDS/LSCS came into being. It is, therefore, appropriate to seek a full picture of Cannon's relationship with FDS/LSCS. Moreover, as the party to whom discovery has actually been propounded, Cannon is better situated to address the issue of overbreadth, as she knows just how broad the universe of responsive documents in her possession is.

Rule 26(c)(1)(G) expressly contemplates that the court may enter a protective order designed to protect confidential information included in discovery. The plaintiffs have indicated that they do not object to the entry of a protective order here, and the court concludes that such an order would be preferable to unduly limiting discovery. The plaintiffs have provided a proposed protective order that, in most ways, captures the necessary requirements for such an order in this case. That proposed order, however, places the responsibility for designating materials as confidential solely on the producing party. The parties, however, have a right to seek protection of any materials retained by Cannon herself as well. Accordingly, the court will modify the plaintiffs' proposed terms to initially afford confidentiality protections to a broader class of documents produced by Cannon, pending review and reclassification of those documents by the relevant company. The terms of that arrangement will be set out in the accompanying Order.

## C. Request to Modify TRO

FDS/LSCS also argues that the court should remove any reference to it from the TRO. FDS/LSCS notes that it is not a named defendant in this case and that it no longer employs Cannon, which, it argues, render its inclusion in the TRO unnecessary and improper. In response, the plaintiffs express skepticism at the claim that Cannon no longer works for FDS/LSCS or, at least, an affiliate, and take issue with the fact that FDS/LSCS has not produced more factual support for its claim.

Rule 65(b) contemplates that a TRO will typically be "of short duration and usually terminate with a prompt ruling on a preliminary injunction, from which the losing party has an immediate right of appeal." *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006) (citing *Vuitton v. White*, 945 F.2d 569, 573 (3d Cir. 1991)). The "modest purpose" of a TRO, *Workman v. Bredesen*, 486 F.3d 896, 922 (6th Cir. 2007), and its corresponding limited duration are enshrined in the Rule's provisions requiring that a TRO automatically expire unless specifically extended or consented to and ensuring an expedited hearing for a preliminary injunction. Fed. R. Civ. P. 65(b)(2)–(3). Cannon has consented to the TRO's remaining in force until the September 12, 2018 hearing. (Docket No. 31.) FDS/LSCS, however, has consistently maintained that its express inclusion in the terms of the TRO is improper and should be lifted. FDS/LSCS is not a defendant in this case, and the court agrees that there is no reason to specifically impose obligations on it by name, at least until a preliminary injunction hearing at which the plaintiffs may demonstrate the basis for doing so. The court, accordingly, will modify the TRO in that respect.[2]

The court notes, however, that, whether or not FDS/LSCS is mentioned by name, the TRO still reaches all entities acting "in active concert or participation with Cannon," if those

---

[2] FDS/LSCS's other request to modify the TRO would enshrine its preferred protections with regard to confidential and proprietary information. Because those issues are addressed by the protective order, that request will be denied.

entities, like FDS/LSCS, have received actual notice of the TRO. *See* Fed. R. Civ. P. 65(d)(2)(C). Therefore, contrary to some of the concerns expressed by the plaintiffs, a modified order does not leave them wholly unprotected. If, for example, FDS/LSCS were, in fact, to have some kind of real but attenuated ongoing relationship with Cannon, through which it was availing itself of the plaintiffs' confidential information, then FDS/LSCS would remain subject to the terms of the TRO by virtue of that relationship, whether or not expressly named. The court, accordingly, will modify the TRO to excise the express mention of Fire Door Solutions, LLC, Life Safety Compliance Solutions, LLC, and Fire Door Armor, LLC. FDS/LSCS, however, remains on notice of the TRO's requirements of parties acting in concert with Cannon.

## CONCLUSION

For the foregoing reasons, FDS/LSCS's Motion to Intervene (Docket No. 22) will be granted subject to the limitations explained in this Memorandum and set out in the accompanying Order, and its Motion to Limit Discovery and Modify Temporary Restraining Order (Docket No. 24) will be granted in part and denied in part.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge